UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
------------------------------------------------------------------- x
                                                                    :   Case No.: 12-cv-73 (BBC)
HY CITE ENTERPRISES, LLC,                                           :
                                                                    :
                                  Plaintiff,                        :
                                                                    :
        -v -                                                        :
                                                                    :
                                                                    :
STEVEN POLLACK                                                      :
                                                                    :
                                  Defendant.                        :
                                                                    :
------------------------------------------------------------------- x

# DEFENDANT STEVEN POLLACK'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN ARBITRATION

STAFFORD ROSENBAUM LLP
*Attorney for Hy Cite Enterprises, LLC*
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
(608) 259.2642

{00565691.DOC;2 }

## Introduction

Defendant Steven Pollack ("Pollack") submits this Memorandum of Law in Opposition to Plaintiff's motion seeking to preliminarily enjoin Pollack from proceeding with the arbitration commenced in New York before the American Arbitration Association.[1] Plaintiff asserts that there is no binding agreement to arbitrate between the parties, and that, even if there were, the arbitration provision does not apply to the parties' dispute. Plaintiff's motion for preliminary injunction should be denied because (1) the controlling distribution agreement in this case is an executed 1987 agreement that contains the relevant arbitration provision; (2) the arbitration provision mandates arbitration in New York because the dispute between the parties primarily stems from issues under the Marketing Program; and (3) plaintiff is not a proper party to this action because Hy Cite, the corporation, not the LLC, is the party who entered into the distributorship agreement and is the party named in the arbitration proceeding in New York.

## Factual Background

The facts relevant to the current motion are set forth in the accompanying declaration of Steven Pollack dated March 16, 2012. (*See* generally, Pollack Dec.) Only certain facts are repeated below as necessary.

As an initial point, Plaintiff did not disclose to defendant or to this Court that it possessed an agreement between Hy Cite Corporation and an entity controlled by Pollack that contained the same arbitration clause that Pollack relies upon in his demand for arbitration. The signed Distributorship Agreement, executed in 1987, is attached to the Declaration of Steven Pollack as

---

[1] All defined terms herein shall have the same meaning ascribed to them in the accompanying Declaration of Steven Pollack In Opposition to Motion for Preliminary Injunction ("Pollack Dec.") dated March 16, 2012.

Exhibit B, and hereafter referred to as the "1987 Distributorship Agreement." (Pollack Dec., ¶ 6, Ex. B.)

For over 25 years, Pollack was one of the top distributors for Hy Cite, and he was one of the first two distributors given the title "Master Territory Director." (Pollack Dec., ¶ 13.) Throughout his distributorship, Pollack earned numerous awards and commendations from Hy Cite. (*See id*.) In the 1980s, Hy Cite created the Marketing Program to allow Hy Cite's distributors to receive benefits and commissions for recruiting other distributors, and for distributors that were in his or her territory. (*See id*., at ¶¶ 15, ¶ 6, Ex. B, pp 4-5.) Article 4 of the 1987 Distributorship Agreement details the Hy Cite Distributorship Marketing Program. (*See id*.) The Marketing Program was designed by Hy Cite's founder, Peter Johnson Sr. (*See id*., ¶ 15.) Among the significant benefits was a recruiting commission, which was a percentage of the merchandise purchased by the new distributor.[2] (*See id*.)

Pollack was so successful that his territory was "spun out," as Hy Cite put it, which meant that he had his own territory that was not under any other distributor. (*See id*., ¶¶ 13-14.) Pollack's "spun out" territory included distributors who collectively have sold over $500,000,000 (that is correct, one-half of a billion dollars). (*See id*., ¶ 14.) Under the 1987 Distributorship Agreement, Pollack is entitled to *lifetime* benefits under that Marketing Program. (*See id*., ¶ 6, Ex. B.) Hy Cite has attempted to terminate Pollack's distributorship for the purpose of ending his lifetime benefits. (*See id*., ¶¶ 29-31.)

In its submissions, plaintiff asserts that an Unsigned 2010 Agreement (submitted as Exhibit C to the Johnson Declaration) governs the parties' relationship. The significance of the Unsigned 2010 Agreement is that, for the first time, Hy Cite included a provision that

---

2   The Marketing Program was set forth in even greater detail in the Distributors Manual, a copy which is attached to the Pollack Declaration as Exhibit E.

purportedly allows it to terminate a distributor "for Cause," which Hy Cite could then rely on to attempt to terminate Pollack's vested lifetime benefits.  (*See id*., ¶ 16.)  Hy Cite wants the Unsigned 2010 Agreement to govern so that Hy Cite can claim Pollack was terminated "for Cause," which, in turn, would allow it to argue that Pollack lost his lifetime commissions and benefits.  (*See id*., ¶¶ 5, 29-31.)  The 1987 Distributorship Agreement does not allow Hy Cite to make that claim.  (See *id*., ¶ 6, Ex. B.)

### Discussion

As the Court held in *Wolf Appliance, Inc. v. Viking Range Corp.,* 686 F. Supp. 2d 878, 886 (W.D. Wis. 2010), a party seeking injunctive relief has "a number of hurdles to overcome before it can obtain preliminary injunctive relief."  As set forth below, plaintiff cannot overcome these hurdles.  In deciding whether to issue an injunction, the U.S. Supreme Court has cautioned that a preliminary injunction is an "extraordinary remedy" that should not be granted unless the movant makes a "clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 129. S. Ct. 365, 376 (2008).

**I.      HY CITE IS NOT LIKELY TO SUCCEED ON THE MERITS.**

    **A.      *The Executed 1987 Distributorship Agreement Governs Pollack's Distributorship.***

Plaintiff's motion for injunctive relief relies heavily on the false premise that there is no signed agreement to arbitrate.  Plaintiff characterized the agreement that Pollack relied on in the arbitration demand as the "Blank Agreement" and asked the court to disregard it.  However, Pollack knew that he had signed a Distributorship Agreement in 1987, and he also knew that that same agreement governed his distributorship with Hy Cite for nearly 25 years.  (*See* Pollack Dec., ¶ 6.)  It turns out that his memory was correct.  (*See id*.)  On March 9, 2012, as a result of

the parties' informal exchange of discovery, Plaintiff disclosed a signed 1987 Distributorship Agreement, which contains the arbitration provision at issue. (*See id.*)

The parties to the 1987 Distributorship Agreement are Hy Cite Corporation and one of Pollack's wholly owned companies, Selective Design (erroneously called Selected Design). (*See id.*, ¶ 6, Ex. B; ¶ 7.) Plaintiff may assert that the 1987 Distributorship Agreement does not govern because Pollack did not sign it in "his individual capacity." (Plaintiff's Br. p. 2.) Such an argument will be specious. For over 28 years Pollack, whether in his own name or through a corporation owned by him, operated under the Distributor number 10449, which was assigned to him by Hy Cite. (*See* Pollack Dec., ¶ 7.) Similarly, Hy Cite always treated Pollack as the distributor. (*See id.*) Hy Cite's termination letter (Exhibit to the Johnson Declaration), was sent to Steven Pollack, Distributor 10449. Hy Cite never considered Selective Designs to be the distributor, and all the marketing material was in the name of "Steven Pollack." (*See* Pollack Dec., ¶ 7.) In fact, throughout Plaintiff's motion papers, Plaintiff states that Pollack himself is the distributor and, therefore, any agreement involving distributorship 10449 (whether in Pollack's name or in a company's name) governs his relationship with Hy Cite. (*See e.g.* brief at p. 3; "Pollack "continued to act as a Hy Cite distributor", p. 8; "Hy Cite sent Pollack a termination letter", p. 8; "Defendant continued to accept payments in accordance with the agreement and the Marketing Plan", p. 8; "Defendant being paid and continuing his distributorship in accordance with the 2010 Agreement.") There are many other examples of Plaintiff's judicial admissions that Pollack was in fact the distributor. Thus, it is clear that the 1987 Distributorship Agreement controls Pollack's relationship with Hy Cite.[3]

---

3   To the extent that the arbitration should have been in the name of Pollack's Entities, Pollack has notified the AAA and amended the demand to make Pollack's entities as Claimants in the arbitration.

Plaintiff asks this Court to rule that the Unsigned 2010 Agreement governs Pollack's distributorship. However, Plaintiff admits that the Unsigned 2010 Agreement was never signed by Pollack. (*See* Johnson affidavit ¶ 10; "According to Hy Cite's records, during that entire time, Pollack, in his individual capacity, did not execute any distributor agreement with Hy Cite", *see also* Pollack Dec., ¶¶ 11-12.) That Pollack never signed the 2010 agreement is dispositive because the 1987 Distributorship Agreement specifically required that any amendment or modification be signed by both parties. (See Pollack Dec., ¶ 6, Ex. B, Paragraph 22(d).) This provision must be enforced. *See Professional Services Group, Inc. v. CH2M Hill Central, Inc.,* 620 F. Sup. 194 (E.D. Wis. 1985) (Court held that there was no modification of an agreement when the plaintiff failed to demonstrate that the parties complied with the contract provision, which provided that the agreement "may not be changed except in the case of an amendment to this agreement.")

The cases that Plaintiff relies on to argue that the Unsigned 2010 Agreement somehow applies are inapposite for several reasons. First, as stated, the 1987 Distributorship Agreement provides that it may not be amended except by a written amendment signed by all parties. Second, the *Carroll v. Stryker Corp.* case that Plaintiff relies upon involved an employment at will, whereas Pollack was an independent contractor governed by a written distributorship agreement. *See Nelsen v. Farmers Mut. Auto. Ins. Co.,* 4 Wis. 2d 36, 51 (1958) (Supreme Court refused to classify contract as employment at will because the defendant was not an employee but an independent contractor). In an employment at will context, as in the *Carroll case*, the consideration for the amendment is that the employment can be terminated at will and the employee's continued employment is sufficient consideration.

In the present case, Hy Cite gave no consideration under the Unsigned 2010 Agreement given that (a) Pollack had already earned lifetime benefits under the Marketing Program in the 1987 Distributorship Agreement; (b) the Unsigned 2010 Agreement continued to give Hy Cite the same right to terminate the distributorship on 60-days notice.

Furthermore, Plaintiff's argument that Pollack's conduct subsequent to January, 2010 can somehow be interpreted as his agreement to be governed by the Unsigned 2010 Agreement governs is without merit.  Under well-settled Wisconsin law, subsequent conduct alone will not result in a modification of an earlier agreement unless it is "unequivocal" that the subsequent conduct was specifically performed under the modification.  Put another way, it is not sufficient if the conduct is ambiguous, meaning the conduct is as "consistent with the original contract as it is the purported modification." *Nelsen,* 4 Wis. 2d at 55.  In this regard, Hy Cite could not unilaterally "alter [the contract's] terms without the assent of the other. . . Instead these must be a meeting of the minds as to the proposed modification." *See also Sterling Products, Inc. v. Ritter Service & Sales, Inc.,* 2011 WL 4553133 (E.D. Wis. 2011).

The *Nelsen* case is illustrative of this point.  In the *Nelsen* case, an independent contractor had an oral agreement with the defendant.  Thereafter, the defendant sent the plaintiff a letter, outlining the plaintiff's duties and change of compensation.  The letter specifically informed the plaintiff that the continued service "will constitute your acceptance of this appointment and approval of its terms and conditions." *Id*. at 45.  The Supreme Court of Wisconsin upheld the trial Court's judgment that there was no modification because the independent contractor's continued performance was as consistent with the original contract as it was with the alleged modification.  The mere fact that there was a letter notifying him that his continued performance

would result in his acceptance of the letter agreement was insufficient to overturn the trial court's determination.

Here, all Plaintiff could offer is that Pollack accessed the distributors' website 20 times, that he continued to act as a Hy Cite distributor, and that he received commissions and other benefits after January, 2010. These were the exact same things, however, that Pollack had done for 28 years as a Hy Cite distributor. (*See also*, Pollack Dec., ¶ 27.) Under *Nelsen*, plaintiff's argument fails. Therefore, the fact that Pollack never signed the Unsigned 2010 Agreement is dispositive and that agreement does not govern the parties' relationship.

Finally, Plaintiff asserts that the 1987 Distributorship Agreement only governed for 2 years. This is wrong. Paragraph 16 of the 1987 Distributorship Agreement, entitled "Term; Automatic Renewal," provides that the agreement automatically renews unless one party terminates the agreement at least 60 days prior to the termination date of the agreement. (See Pollack Dec., ¶ 6, Ex. B, p. 6, paragraph 16.) Contrary to Plaintiff's assertions, the agreement does not govern "for no more than 2 years from the date it was executed." (Plaintiff's Br. at p. 7.) Rather, once the term "automatically" renewed for another year, then the provision would trigger another one year term, which would continue each year thereafter until someone terminated it at least 60 days before the end of the term, which never happened. Under Plaintiff's logic, Pollack and Hy Cite had no agreement in place from 1986 through 2010, which is nonsensical for a variety of reasons, including that Pollack's territory generated $500,000,000 in sales during that time.

> **B.    The 1987 Distributor Agreement's Arbitration Clause Applies To The Parties Dispute In New York.**

The arbitration provision in paragraph 13 of the 1987 Distributorship Agreement specifically requires that any dispute between Hy Cite and Pollack under the Marketing Program

be arbitrated. Relying on this provision, Pollack commenced the Arbitration in New York (which is where he resides) to recover benefits due him under the Marketing Program.

Plaintiff is attempting to "split hairs" by suggesting somehow that there should be one arbitration related to Pollack's benefits under the Marketing Program and a second lawsuit in this Court relating to his termination. The Arbitration is about Pollack's benefits under the Marketing Program. (See Johnson Dec., ¶ 6, Ex. A; *see also* Pollack Dec., ¶ 20.) As stated in the demand for arbitration:

> In the Agreement, which incorporates by reference the Hy Cite distributor manual, including the benefits contained therein, Hy Cite agreed to pay Claimant commissions, bonuses and marketing incentives for the sale and distribution of Hy Cite products, including, without limitation, dishware and cookware. Additionally, having achieved the Hy Cite title of "Master," Claimant was entitled to said commissions, bonuses, marketing incentives and other benefits, including, without limitation, commission for referrals to other distributors, for his entire lifetime. To be sure, part of the incentive and reward to become Master was in reliance on irrevocable lifetime benefits. Lifetime benefits of a Master could not be terminated for any reason whatsoever.

(*See* Johnson Dec., *¶ 6, Ex. A.*)

While one of the allegations is that Pollack was wrongfully terminated, what Pollack is seeking are the lifetime benefits he earned. The heart of the parties' dispute, therefore, relates to Pollack's rights to future income under the Marketing Program. Further, there is no dispute that Hy Cite could have terminated Pollack's distributorship at any time on 60 days' notice so termination, while wrongful, is secondary to the benefits under the Marketing Program, which Hy Cite could not terminate. In any event, there should not be two separate proceedings, one in arbitration, and one in Court, as the arbitrator can certainly determine all disputes.[4]

---

4   To the extent that the arbitration should have been in the name of Pollack's Entities,

## II. HY CITE HAS FAILED TO ESTABLISH THAT IT HAS NO ADEQUATE REMEDY AT LAW AND THAT IT WILL BE IRREPARABLY HARMED.

Plaintiff asserts that it will suffer irreparable harm if it is forced to arbitrate at this time because it never agreed to arbitration. However, Hy Cite drafted the 1987 Distributorship Agreement and it specifically included the arbitration provision governing disputes involving the Marketing Program. (*See* Pollack Dec., ¶ 20.) That document governed Pollock's distributorship for nearly 25 years. By signing that document, Hy Cite agreed to arbitrate. Hy Cite cannot possibly be irreparably harmed by participating in a procedure that it proposed. This is complete failure to satisfy a key requirement to obtaining injunctive relief. Plaintiff's motion should be denied for this reason alone.

## III. THE BALANCE OF EQUITIES BETWEEN THE PARTIES AND THE INTERESTS OF THE PUBLIC WEIGH IN POLLACK'S FAVOR.

Pollack's distributorship has been terminated and he has been denied lifetime benefits that he earned under the Marketing Program. Pollack's territory resulted in more than $500,000,000 (one-half billion in sales) to Hy Cite. The explosive growth that made Hy Cite a company with over a billion dollars of sales was created, in large part, by its distributors and the Marketing Program, but Hy Cite is looking to avoid paying Pollack for his efforts. It is clear from the circumstances of this case that Hy Cite is attempting to utilize the Unsigned 2010 Agreement to justify a "for Cause" termination of Pollack's distributorship to deprive him of benefits that he earned for 28 years of service to the company. Accordingly, the balance of equities weighs overwhelmingly in Pollack's favor.

The public interest also favors the Arbitration. Wisconsin substantive law governs this dispute and Wisconsin law favors arbitration. The Supreme Court of Wisconsin has in a number

---

Pollack has notified the AAA and amended the demand to make Pollack's entities as Claimants in the arbitration.

of cases emphasized that Wisconsin has a long standing policy favoring arbitration as an alternative method of dispute resolution. *See Franke v. Franke*, 268 Wis. 2d 360, 374 (2004); *DeBaker v. Shah*, 194 Wis. 2d 104, 112 (1995); *Kemp v. Fisher*, 89 Wis. 2d 94, 100 (1979). When parties to an agreement have expressed an intent to arbitrate their dispute, Wisconsin courts will enforce that provision. Such is the case here.

## IV. PLAINTIFF HAS NO STANDING TO ENJOIN POLLACK.

Plaintiff, "Hy Cite Enterprises, LLC" is not the proper plaintiff to this lawsuit. Pollack named Hy Cite Corporation as a respondent in the Arbitration. Moreover, Hy Cite Corporation was the party to the 1987 Distributor's Agreement with Pollack (and is the party named in the other documents before this Court). Accordingly, Hy Cite Enterprises LLC appears to be an improper party in this case, and lacks standing to bring this action to enjoin the Arbitration. Plaintiff's motion should be denied for this reason as well.

### Conclusion

For the above stated reasons, plaintiff Steven Pollack, respectfully requests that the court deny plaintiff's motion for preliminary injunction.

Dated: March 16, 2012

STAFFORD ROSENBAUM LLP

By:    /s/ Jon Evenson
Brian Butler
Jon Evenson
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
(608) 259.2642
*Attorneys for Defendant Steven Pollack*