UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

HY CITE ENTERPRISES, LLC,

        Plaintiff,

v.

STEVEN POLLACK,

        Defendant.

Case No.: 12-cv-73-bbc

---

**PLAINTIFF HY CITE ENTERPRISES, LLC'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

---

Defendant Steven Pollack ("Pollack"), an individual, requests this Court to bestow upon him an individual contractual right to arbitrate based on a 1987 distributorship agreement between Hy Cite and a corporation that was dissolved over 20 years ago, of which he had held the office of President. Such substitution of corporate entity contractual rights with individual contractual rights is not supported by the facts or law of this case. Pollack is now playing a shell game with multiple entities and his recently recalled "mistake," which he had not noticed or corrected for over 20 years, is wholly dubious at best and a convenient invention at worst.

Despite the mischaracterization in his opposition brief, Pollack has no signed agreement to arbitrate with Plaintiff Hy Cite Enterprises, LLC ("Hy Cite").[1]  Rather, Defendant relies upon a January 16, 1987 Distributorship Agreement (the "1987 Agreement") between Hy Cite Corporation and Selected Designs, Inc. , a dissolved corporation with which Defendant was formerly associated.  As the record and law make clear, Defendant's reliance upon the 1987 Agreement is misplaced and fails to refute the fact that Hy Cite and Defendant have no agreement to arbitrate.[2]

Although Defendant's signature appears on the 1987 Agreement, it is undisputed that he signed the 1987 Agreement as "President" of and on behalf of a now dissolved corporation, Selected Designs, Inc.  Another officer of Selected Designs, Inc. also signed the 1987 Agreement as "Vice President."  Regardless of Defendant's desire to simply ignore relevant business structures, the law demands that actions taken on behalf of a business entity as opposed to as an individual must be recognized.  Defendant's decision to form a corporation and to enter into agreements as a corporation provided Defendant certain legal benefits but also carried certain legal burdens and consequences.  Undeniably, Defendant is bound by his decision—he does not get to ignore the existence of the corporation only when it serves his purpose.  *See, e.g.*, *United*

---

[1] Defendant's argument regarding his arbitration demand being made of Hy Cite Corporation and not Hy Cite Enterprises, LLC lacks merit.  As explained in Section III, below, Hy Cite Enterprises, LLC is the legal owner of all of the assets and liabilities that were previously owned by the former Hy Cite Corporation.
[2] In his response brief, Defendant has not raised and does not dispute that this Court is the proper forum to determine the issue of arbitrability.  (See Docket No. 15.)  Accordingly, Defendant has waived any such argument.

*States v. Hagerman*, 545 F.3d 579, 582 (7th Cir. 2008) (choosing to do business in entity form requires person to "take the burdens with the benefits").

The absence of any agreement to arbitrate between Hy Cite and Defendant establishes that Hy Cite has a strong likelihood of success on the merits of its claim regarding arbitration. Accordingly, each of the preliminary injunction factors weighs in favor of Hy Cite's position, and therefore, Court should grant Hy Cite's motion for preliminary injunction.

## ARGUMENT

**I.      The 1987 Agreement Does Not Govern Pollack's Distributorship.**

The complete lack of any agreement to arbitrate between Hy Cite and Defendant is proven by Defendant's recent change in position. He first asserted that he was a party to the blank, post-1987 agreement. He now argues that the 1987 Agreement with Selected Designs, Inc. (which counsel for Hy Cite voluntarily provided to Defendant's counsel on March 9, 2012) governs and mandates arbitration. Defendant's latest theory does not defeat Hy Cite's motion.

   A.      The 1987 Agreement Was Between Hy Cite and Selected Designs, Inc.

Defendant's entire theory is premised on the argument that his signature on the 1987 Agreement personally entitles him to invoke the 1987 Agreement's arbitration provision. Defendant is incorrect. Pollack cannot simply ignore that the 1987 was between Hy Cite and Selected Designs, Inc., and that he signed he 1987 Agreement on

behalf of Selected Designs, Inc.,[3] as the corporation's President, and not in his individual capacity.  (*See* Docket No. 16, Ex. B.)  Although Defendant contends that focusing on the fact that he signed the 1987 Agreement on behalf of a corporation and not in his individual capacity is "specious," it is telling that Defendant fails to cite any case law supporting his contention.  Hy Cite entered into the 1987 Agreement with Selected Designs, Inc. and, thus, the rights and obligations of the parties under the 1987 Agreement are between Hy Cite and Selected Designs, Inc. and not Defendant.

Wisconsin courts have long recognized that "'[b]y legal fiction the corporation is a separate entity and is treated as such under all ordinary circumstances[,]'" and "the 'legal fiction' of a corporation is not one to be lightly disregarded." *Consumer's Co-op of Walworth County. v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d 211 (1988) (quoting *Milwaukee Toy Co. v. Indus. Comm'n of Wis.*, 203 Wis. 493, 495, 234 N.W. 748 (1931)).  Simply put, "[t]he general rule is that a corporation is treated as a legal entity distinct from its members." *Id.* at 475 (internal citations and quoted source omitted).  The purpose of creating this separate legal entity is to provide shareholders with limited liability, which "promote[s] commerce and industrial growth by encouraging shareholders to make capital contributions to corporations without subjecting all of

---

[3] Defendant states that—even though he wrote the company name and its FEIN on the blank in the 1987 Agreement--the name Selected Designs, Inc. was an error on the 1987 Agreement and that the business was actually "Selective Design."  (Docket No. 15 at 4.)  Defendant, however, provides no evidence for this claim other than his say so.  Hy Cite contends that not only does the document speak for itself but the distributor information sheet submitted by Defendant in 1984 lists "Selected Designs, Inc." as the corporation through which Defendant distributed cookware.  (Second Johnson Decl. ¶ 3, Exh. A.)  Thus, Defendant signing on behalf of the same corporation he listed on his distributor information sheet can hardly be seen as a "mistake."  Rather, it is just another convenient attempt to ignore the corporation.

their personal wealth to the risks of the business." *Id.* at 474 (quoting source omitted); *see also Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 850, 470 N.W.2d 888 (1991) ("The limited liability attribute of corporations is in fact what makes this business organization so significant.").

Taking advantage of these benefits, Defendant incorporated Selected Designs, Inc. In doing so, Defendant specifically availed himself to the limited liability protection of the corporate structure by signing the 1987 Agreement as an officer of Selected Designs, Inc. Defendant cannot be permitted to choose when he gets to have that protection or its constraints depending on when it best suits his interests. *See Krier v. Vilione*, 2009 WI 45, ¶ 26, 317 Wis. 2d 288, 766 N.W.2d 517 ("One cannot maintain the corporate structure when it inures to one's benefit and then ignore the constraints of corporate law when it does not.").

Moreover, that Hy Cite treated Defendant as the contact for Distributor number 10449 does not alter the fact that Hy Cite had entered an agreement with a corporation and not an individual. "A corporation can act *only* through living persons." *City of Kiel v. Frank Shoe Mfg. Co.*, 245 Wis. 292, 297, 14 N.W.2d 164 (1944) (emphasis added). In fact, two people representing Selected Designs, Inc. signed the 1987 Agreement: Defendant, as president; and Frank Sorrentino, as vice president. (*See* Docket No. 16, Ex. B, at HCE000037.) Thus, as the president, Defendant was simply the living person representative through whom Selected Designs, Inc. acted. This does not alter the fact that the rights and obligations of the 1987 Agreement run to Selected Designs, Inc., the corporation, and not to Pollack individually.

Despite Defendant's contrary assertions, this distinction is critical. *See Benjamin Plumbing, Inc.*, 162 Wis. 2d at 850 ("Where a party is contracting with a business entity [ ], it makes a considerable difference whether or not it is a corporation on the other side of the bargaining table."). The general rule is that "contracts create enforceable rights between those who sign them." *Felton v. Teel Plastics, Inc.*, 724 F. Supp. 2d 941, 953 (W.D. Wis. 2010) (citing *Becker v. Crispell-Snyder, Inc.*, 2009 WI App 24, ¶ 9, 316 Wis. 2d 359, 763 N.W.2d 192). Thus, the rights found in the 1987 Agreement are enforceable between Hy Cite and Selected Designs, Inc., not between Hy Cite and Defendant individually.

Similarly, because the rights and obligations in the 1987 Agreement belong to Selected Designs, Inc., only the corporation can enforce those rights, not Defendant individually. "Wisconsin law adheres to the well-established corporate law principle that shareholders of a corporation may not maintain actions individually to redress injuries to the corporation." *Virnich v. Vorwald*, 677 F. Supp. 2d 1066, 1070 (W.D. Wis. 2009) (citing *Krier*, 2009 WI 45, ¶ 33). It was Selected Designs, Inc. that was provided with the rights and benefits in the 1987 Agreement. It is also Selected Designs, Inc., and not Defendant, which has suffered any alleged injury from Hy Cite's alleged refusal to comply with the terms of the agreement. *See Id.* at 1071 (shareholder had no standing because "it [was] the corporation, not the shareholders or related entities, that ha[d] suffered the primary injury caused allegedly by defendants' actions"). Accordingly, Defendant lacks standing under the 1987 Agreement.

Additionally, the fact that Defendant alleges he was the sole owner or shareholder of Selected Designs, Inc. does not alter the application of the shareholder-standing rule. This Court has previously explained that "[t]he shareholder-standing rule applies even when, as here, the corporation has only a small number of shareholders or is a single-shareholder entity." *Id.* at 1072. Although application of the rule to such an entity may appear "harsh, or, at least, counterintuitive, [it] is justified because the sole shareholder elects to use the corporate form." *Id.* (internal quotation omitted). As the party to the Agreement, claims for enforcement of rights provided by the 1987 Agreement must be brought by Selected Designs, Inc., not Defendant.

Although Defendant notes that he has notified the AAA to amend his arbitration demand to include "Selective Designs of New York, Inc." and "Tristate RP, Inc." as claimants[4], this does not change the fact that Pollack is not entitled to arbitration under the 1987 Agreement. Indeed, Defendant's addition of these companies as claimants to his arbitration demand supports the conclusion that Defendant, individually, does not have any agreement with Hy Cite to arbitrate any claims. Defendant concedes as much by noting in two separate footnotes that "[t]o the extent that the arbitration should have been in the name of Pollack's Entities, Pollack has notified the AAA and amended the

---

[4] To prevent these entities from attempting to force Hy Cite into arbitration despite the absence of an arbitration agreement with either of them, Hy Cite has simultaneously amended its complaint adding both of them as parties to this action. Hy Cite's Amended Complaint requests that this Court declare that Selective Designs and Tristate RP and Hy Cite are not parties to an agreement to arbitrate. Hy Cite hereby amends its Motion for Preliminary Injunction to seek injunctive relief against Selective Designs and Tristate R.P., as well as Defendant. No further briefing is needed on the amended Motion, because both parties' briefing fully addresses the relevant issues.

demand to make Pollack's entities as Claimants in the arbitration." (Docket No. 15 at 4 n.3 and at 8 n.4.).

Further, it was Selected Designs, Inc., and not Selective Designs of New York, Inc. or Tristate RP, Inc., which executed the 1987 Agreement. (*See* Docket No. 16, Ex. B.) Without any support or explanation, Defendant baldly asserts that Selected Designs, Inc. was "erroneously" listed on the 1987 Agreement and the "Selective Design" should have been the proper party. (Docket No. 15 at 5.) Defendant has not supported and cannot support this assertion. Conversely, Selected Designs, Inc. is identified by the same address and FEIN number on the 1987 Agreement as on distributor information sheet on file with Hy Cite. (*Compare* Docket No. 16, Exh. B *with* Second Johnson Decl. ¶ 3, Exh. A.) Moreover, Defendant has failed to provide any evidence that Hy Cite has entered into any written agreement, let alone a written agreement to arbitrate, with Tristate RP, Inc.

      B.     <u>Both Selected Designs and Selective Designs of New York Are Dissolved Entities.</u>

Nonetheless, whether Selected Designs or Selective Design was the party or intended party to the 1987 Agreement does not matter in light of the fact that both have been dissolved. Selected Designs, Inc. was dissolved *twenty* years ago in 1992, and Selective Designs of New York, Inc.[5] was dissolved *twenty-two* years ago in 1990.

---

[5] Hy Cite presumes that Defendant's reference to "Selective Design" in his Response refers to Selective Designs of New York, Inc. given that Defendant has notified the AAA of his intent to amend his arbitration demand to include Selective Designs of New York, Inc. (Bruchs Decl. ¶ 3, Exh. A.)

(Bruchs Decl. ¶4, Exhs. B and C.)  Therefore, neither Defendant nor either entity can bring any action to enforce the arbitration rights found in the 1987 Agreement.

According to the on-line records provided by the New York Secretary of State, both Selected Designs, Inc. and Selective Designs of New York, Inc. are inactive due to "Dissolution by Proclamation / Annulment of Authority."  (Bruchs Decl. ¶ 4, Exhs. B and C.)  Dissolution by proclamation refers to the process under New York Tax Law § 203-a, where business corporations that fail to file required reports or taxes are dissolved by proclamation of the New York Secretary of State.  Once the proclamation is published, the corporation "shall be deemed dissolved without further legal proceedings."  N.Y. Tax Law § 203-a(4).

"Statutory dissolution by proclamation of the Secretary of State pursuant to Tax Law § 203-a is intended to encourage voluntary payment of franchise taxes" and thus, "[a]fter dissolution, a delinquent corporation retains a limited de jure existence solely for the purpose of winding up its affairs, and retains capacity to bring suit for that purpose."  *Lorisa Capital Corp. v. Gallo*, 506 N.Y.S.2d 62, 70, 119 A.D.2d 99 (N.Y. App. Div. 1986) (internal citations omitted).  In other words, "[a] corporation dissolved under [tax law] section 203-a is legally dead and can no longer sue except in the limited respects specifically permitted by the statute."  *Id.* at 71 (internal quotation omitted).  Although a dissolved corporation may bring suit to wind up its affairs, "the winding up of affairs cannot continue indefinitely" but must be done in a reasonable time.  *Lance Int'l, Inc. v First Nat'l. City Bank*, 927 N.Y.S.2d 56, 58 and n.1, 86 A.D.3d 479 (N.Y. App. Div. 2011).  Surely, were there are corporate level tax or other liabilities, one can only

9

assume that Pollack would for that reason fully endorse the corporate form to shield himself from individual liability. One cannot have it both ways.

Here, both Selected Designs, Inc. and Selective Designs of New York, Inc. have been dissolved for at least 20 years. Neither corporation can be said to still be "winding up its affairs." *See, e.g.*, *id.* (party that had conducted business for six years, filed for bankruptcy in 1965 and was dissolved in 1975 could not be said to have been still winding up its affairs in 2008). Accordingly, Defendant could not bring any suit to enforce the rights of either corporation.

      C.     <u>Selected Designs, Inc. Could Not Assign the 1987 Agreement.</u>

Although Defendant does not explicitly contend that the arbitration rights in the 1987 Agreement were assigned to him or Tristate RP, Inc., Hy Cite notes that Selected Designs, Inc. could not have made such an assignment. The 1987 Agreement specifically states that "[t]his Agreement is personal and shall not, nor shall any interest herein, be assignable as to the interest of Distributor, whether by contract, operation of law or otherwise, without the prior written consent of the Companies." (Docket No. 16, Ex. B. at HCE000036.) Accordingly, the only entity that had any agreement to arbitrate with Hy Cite was Selected Designs, Inc. and because Selected Designs, Inc. has been dissolved since 1992, neither Defendant, nor any of his entities, can seek to enforce any right to arbitration under the 1987 Agreement.

10

In the end, the 1987 Agreement does not govern Defendant's relationship with Hy Cite.[6] In light of the absence of any written agreement between Defendant and Hy Cite to arbitrate, Hy Cite has exceeded its burden to show a likelihood of success on the merits by establishing "a better than negligible" chance of showing there is no agreement between Hy Cite and Defendant to arbitrate. *Wolf Appliance, Inc. v. Viking Range Corp.*, 686 F. Supp. 2d 878, 886 (W.D. Wis. 2010).

## II.     Hy Cite Cannot Be Required To Submit To Arbitration Any Dispute Which It Has Not Agreed To Submit.

It is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *E.E.O.C v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("Arbitration under the FAA is a matter of consent, not coercion."); *Agco Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). Thus, arbitration agreements must not be so broadly construed as to encompass claims that were not intended to be arbitrated under the contract. *Agco Corp.*, 216 F.3d at 593. Therefore, the Court must be guided by the express provisions of the arbitration clause to determine which disputes the parties agreed to arbitrate. The arbitration clause contained in Section 13 of the 1987 Agreement is exceedingly limited.

---

[6] Defendant mistakenly contends that Hy Cite "asks this Court to rule that the Unsigned 2010 Agreement governs Pollack's distributorship." (Docket No. 15 at 5.) In fact, what Hy Cite argues is that "*if* any agreement governed" termination of Defendant's distributorship it was the 2010 Agreement. (Docket No. 6 at 7-8) (emphasis added). While it is true that Hy Cite does believe that the 2010 Agreement governs the termination of the distributorship relationship Defendant had with Hy Cite, the Court need not rule as such to decide the current motion. Instead, the Court need only find that Hy Cite has established a better than negligible showing that there is no agreement to arbitrate entered into between Defendant and Hy Cite.

A. <u>The Limited Arbitration Clause in the 1987 Agreement Does Not Cover the Claims Raised In Defendant's Arbitration Demand.</u>

Even assuming *arguendo* that Defendant could enforce the arbitration clause in the 1987 Agreement between Hy Cite and Selected Designs, Inc., the limited arbitration clause does not evidence an agreement to arbitrate claims related to the termination of the distributorship relationship between Hy Cite and Defendant. "Arbitrators have the authority to decide only those issues actually submitted by the parties." *Agco Corp.*, 216 F.3d at 593. In other words, "'[a]rbitration agreements [are] enforceable to the same extent as other contracts, so courts must enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'" *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (quoting *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692 (7th Cir. 2004)).

The 1987 Agreement's arbitration clause is exceptionally limited, applying only to those disputes confined to the interpretation of the Royal Prestige Marketing Program. By its clear terms, the 1987 Agreement is "… specifically confined to the *interpretation* of this Part IV of this Agreement [the Royal Prestige Marketing Program] *and* any portions of the Distributor's Manual incorporated herein and relevant to such a dispute…." (Docket No. 16, Ex. B, at HCE000033) (emphasis added). The clause is therefore limited in two important ways. First, it covers only the Royal Prestige Marketing Program defined in the 1987 Agreement. (*Id.*) Second, even with the respect to the Royal Prestige Marketing Program set forth in the 1987 Agreement, the clause

12

only covers "interpretation" of the program, not a claim for breach of contract, causation or damages thereunder. (*Id.*)

Defendant tries to re-characterize the claims in his demand for arbitration as all falling under this limited arbitration provision. But Defendant's arbitration demand proves otherwise. The demand sets forth four (arguably five) claims. An analysis of how each claim falls outside the limited arbitration provision is set forth below.

Defendant's first claim plainly alleges a claim for wrongful termination. Indeed, the claim states that "… in violation of the Agreement … Hy Cite improperly terminated Claimant …." (Docket No. 8, Ex. A.) Indeed, and as further proof, under claim one, Defendant seeks reinstatement. (Id.) Specifically absent from the arbitration clause is any mention of distributorship termination. In fact, the arbitration provision is found within Part IV (the "The Royal Prestige Marketing Program") whereas the portion of the 1987 Agreement that discusses termination of a distributorship is found in Part VII of the Agreement titled "General Covenants." (Docket No. 16, Ex. B, at HCE000033 – 34.) Therefore, Hy Cite has not agreed to arbitrate the propriety of the termination of any distributorship or any claims associated with such termination.

Likewise, Defendant's allegation that Hy Cite breached the covenant of good faith and fair dealings in the 1987 Agreement, (Docket No. 8, Ex. A) (contained in the first claim, but arguably a separate claim) is outside the scope of the limited arbitration provision. Again, the specifically-confining, plain language of the arbitration clause does not mention or include implied covenants and any such allegation would fall

outside of the Royal Prestige Marketing Program.  (*See* Docket No. 16, Ex. B, at HCE000032 – 33.)

Defendant's second claim is similarly not subject to arbitration.  Claim two alleges breach of contract for Hy Cite's alleged failure to pay Defendant the correct territory "spin-out" adjustments. (Docket No. 8, Ex. A.)  However, no where in Part IV of the 1987 Agreement is there an entitlement or reference to "spin-out" adjustments. (*See* Docket No. 16, Ex. B, at HCE000032 – 33.)  Moreover, the arbitration clause does not pertain to claims for breach of contract, including causation and damages, but rather "interpretations" of the Royal Prestige Marketing Program.  (*Id*.)

Equally, Defendant's third claim for breach of contract for alleged failure to provide the requisite notice of termination falls outside the scope of the arbitration clause.  As stated above, provisions related to distributorship termination, including notice provisions, are contained in Part VII of the 1987 Agreement (*see* Docket No. 16, Ex. B, at HCE000034) and well beyond the purview of interpreting Part IV and the arbitration clause.

Finally, Defendant's fourth claim is also excluded from the arbitration clause. Defendant fourth claim alleges that "Hy Cite improperly deducted $5,000 from Claimant's September, 2011 commission check." (Docket No. 8, Ex. A.)  Notably, Defendant's fourth claim is vague and lacks any explanation as to what made the alleged deduction improper.  Regardless, under any variation, this claim falls outside of any provision of the Royal Prestige Marketing Program as explained in the 1987 Agreement.  Indeed, entirely absent from Part IV of the 1987 Agreement is any mention

of what amounts and for what reasons Hy Cite can deduct money from a commission check. Moreover, even assuming that Defendant's fourth claim alleges that the $5000 deduction was improper as a breach of an agreement about commission payments, whether Hy Cite allegedly breached any provision of the 1987 agreement is not arbitrable. Deciding whether Hy Cite's alleged deduction was a breach of a provision of the 1987 Agreement is not "specifically confined to the interpretation" of the Marketing Plan, which is the only type of issue that can be arbitrated. Accordingly, Defendant's fourth and final claim does not raise an issue that can be arbitrated under the 1987 Agreement's arbitration provision.

Therefore, in light of the specifically limited applicability of the language in the 1987 Agreement's arbitration clause and the nature of the issues defined in Defendant's arbitration demand, Hy Cite is likely to succeed on its claim that it has not agreed to arbitrate Defendant's claims. Accordingly, Defendant should be enjoined from trying to arbitrate such issues.

    B.    <u>Any Claims Outside the Scope of the Limited Arbitration Clause Are For This Court's Decision.</u>

Finally, even if this Court were to decide that some of the claims set forth in Defendant's demand for arbitration are within the limited scope of the arbitration provision and therefore arbitrable, any and all remaining claims outside the scope of the arbitration clause would remain within the jurisdiction of this Court. *See, e.g., Encompass Ins., Inc. v. Hagerty Ins. Agency, Inc.,* No. 08-cv-337, 2009 U.S. Dist. LEXIS 4113, at *32-38 (W.D. Mich. Jan. 22, 2009); *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1213

(11th Cir. 2011). Again, as stated above, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers*, 363 U.S. at 582; *Waffle House, Inc.*, 534 U.S. at 294 ("Arbitration under the FAA is a matter of consent, not coercion."); *Agco Corp.*, 216 F.3d at 593. Tellingly, Defendant offers no legal support for its proposition that there should not be two separate proceedings, one in arbitration and one in Court. (See Docket No. 15 at 9.)

### III. Hy Cite Enterprises, LLC Is The Proper Party To Bring This Lawsuit.

Defendant's argument that Hy Cite Enterprises, LLC (as opposed to Hy Cite Corporation) is not the proper party to bring this action lacks merit. Obviously unbeknownst to Defendant, in 2011, Hy Cite conducted a multi-step reorganization. (Second Johnson Decl. ¶4.) Among other changes, "Hy Cite Corporation" was renamed "Hy Cite Enterprises, Inc.," which was then converted to a limited liability company named "Hy Cite Enterprises, LLC." (Second Johnson Decl. ¶ 5.) Hence, after this reorganization, Hy Cite Enterprises, LLC, was the successor entity to the former Hy Cite Corporation, and became the legal owner of all of the assets and liabilities that were previously owned by the former Hy Cite Corporation. (Second Johnson Decl. ¶ 6). Thus, Hy Cite Enterprises, LLC is the proper entity to bring this lawsuit.[7]

---

[7] Additionally, Hy Cite notes that the clause in the 1987 Agreement prohibiting Selected Designs, Inc. from assigning the agreement without Hy Cite's written consent, says nothing about Hy Cite's ability to assign the agreement. (Docket No. 16, ex. B at HCE000036.) Indeed, nothing in the 1987 Agreement prohibits Hy Cite from assigning it as needed.

**IV.     Remaining Preliminary Injunction Factors Favor Granting Hy Cite's Motion.**

Defendant's challenges to the irreparable harm, balancing of the harms and public interest factors of the preliminary injunction analysis are all founded on the success of his argument that in the 1987 Agreement Hy Cite agreed to arbitrate with Defendant. Having proven this argument incorrect, Hy Cite stands on the reasoning provided in its initial brief in support of its motion for a preliminary injunction to establish those factors, including (1) that Hy Cite would be irreparably harmed by being forced to arbitrate with Defendant when it is likely that it did not agree to such arbitration; (2) forcing Hy Cite to arbitrate despite it never having agreed to arbitrate with Defendant would be a greater harm than a delay in Defendant being able to pursue arbitration; and (3) it is in the public interest to not force Hy Cite to arbitrate issues it likely never agreed to arbitrate. (Docket No. 6 at 10-12.)

Additionally, Hy Cite notes that Defendant has the balance of the harms wrong in that seeking to prevent Defendant from pursing arbitration for termination of the distributorship and issues associated with the termination is not akin to preventing Defendant from having the propriety of the termination decided at all. Hy Cite is seeking the former, while recognizing that Defendant can pursue his arguments about the alleged wrongful termination of the distributorship and its benefits in this Court as opposed to in arbitration.

17

## CONCLUSION

Hy Cite has carried its burden in establishing that all four factors weigh in favor of granting Hy Cite's motion to preliminarily enjoin Defendant from initiating and/or pursing arbitration against Hy Cite regarding any claims associated with Defendant's distributorship with Hy Cite.

Dated this 23rd day of March, 2012.

                **MICHAEL BEST & FRIEDRICH LLP**


By:   s/ Amy O. Bruchs
      Michelle L. Dama, SBN 1041809
      Amy O. Bruchs
      Albert Bianchi, Jr.
      One South Pinckney Street, Suite 700
      P.O. Box 1806
      Madison, WI 53701-1806
      Telephone: (608) 257-3501
      Fax: (608) 283-2275
      Email: mldama@michaelbest.com
             aobruchs@michaelbest.com
             abianchi@michaelbest.com

Attorneys for Plaintiff Hy Cite Enterprises, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2012, I caused the following:

(1) Plaintiff Hy Cite Enterprises, LLC's Reply Brief In Support Of Motion For Preliminary Injunction; and

(2) Plaintiff Hy Cite Enterprises, LLC's Reply To Defendant's Response To Plaintiff's Statement Of Proposed Facts In Support Of Motion For Preliminary Injunction;

(3) Second Declaration of Peter Johnson, Jr.

(4) Declaration of Amy O. Bruchs

to be electronically filed with the Clerk of Court using the ECF system, which will make this document available to all counsel of record for viewing and downloading from the ECF system.

/s/ Amy O. Bruchs