UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

HY CITE CORPORATION,

       Plaintiff,                                Case No.: 12-cv-73-bbc

       v.

STEVEN POLLACK,

       Defendant.

---

**PLAINTIFF HY CITE ENTERPRISES, LLC'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF PROPOSED FACTS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

---

       Plaintiff Hy Cite Enterprises, LLC, ("Hy Cite") by its counsel, submits this Reply to Defendant's Response to Plaintiff's Initial Statement of Proposed Facts.[1]

## JURISDICTION

       1.       Hy Cite Enterprise, LLC, is a limited liability company organized under the laws of the State of Wisconsin, with a principal place of business located at 333 Holtzman Road, Madison, Wisconsin 53713.  (Declaration of Peter Johnson, Jr.  ¶3, February 16, 2012.)

       **Defendant's Response:**    Admitted.

---

[1] Hy Cite notes that Defendant's declaration (*see* dkt. #16) contains facts that are neither included in response to Hy Cite's proposed facts nor in a separate proposed findings of fact from Defendant.  This leaves Hy Cite with no efficient method to object or dispute those additional facts in the declaration.  Accordingly, Hy Cite raises a standing dispute and objection to any facts included Defendant's declaration but not responsive to one of Hy Cite's proposed findings of fact.

2.      Hy Cite Corporation is the sole member of Hy Cite Enterprise, LLC. (Johnson Decl. ¶4.) Hy Cite Corporation is a corporation organized under the laws of the State of Wisconsin, with a principal place of business located at 333 Holtzman Road, Madison, Wisconsin 53713. (Johnson Decl. ¶4.)

**Defendant's Response:**     Admitted.

3.      The current address Hy Cite has for Defendant Steven Pollack is 14 Hemingway Drive, Dix Hills, New York 11746. (Johnson Decl. ¶5.)

**Defendant's Response:**     Admitted.

4.      On January 12, 2012, Defendant filed an arbitration demand against Hy Cite with the American Arbitration Association in New York. (Johnson Decl. ¶6, Ex. A.)

**Defendant's Response:**     Admitted in part. Admit that Pollack did file a demand for arbitration dated January 12, 2012, but did so against Hy Cite; not against HCE as Plaintiff alleges. (Declaration of Steven Pollack dated March 15, 2012 ("Pollack Declaration") ¶ 1).

**Hy Cite's Reply:**     Hy Cite Enterprises, LLC subsumed all of Hy Cite Incorporated's assets and liabilities. (Second Declaration of Peter Johnson, Jr. ¶¶4-6, March 23, 2012.) Thus, Hy Cite Enterprises, LLC is the proper party to respond to Defendant's arbitration demand.

5.      The monetary relief requested by Defendant in his arbitration demand exceeds $200,000.00. (Johnson Decl. ¶6, Ex. A.)

**Defendant's Response:**     Admitted.

**Background**

6.      For decades, Hy Cite has been involved in selling cookware to independent distributors, who in turn sell the cookware to consumers.  (Johnson Decl. ¶7.)

**Defendant's Response:**     Admitted in part. Admit that Hy Cite (not HCE as alleged) has been involved for decades in selling cookware to independent distributors, who in turn sell the cookware to consumers.

**Hy Cite's Reply:**     Defendant fails to cite any evidentiary support for its response and thus, the response fails to comply with Section III, 2, (b), of the Court's "Procedures To Be Followed On Motions For Injunctive Relief."  Accordingly, the fact should be admitted.  Additionally, in 2011, "Hy Cite Corporation" was renamed "Hy Cite Enterprises, Inc.," which was then converted to a limited liability company named "Hy Cite Enterprises, LLC."   After this reorganization, Hy Cite Enterprises, LLC, was the successor entity to the former Hy Cite Corporation, and became the legal owner of all of the assets and liabilities that were previously owned by the former Hy Cite Corporation.  (Second Johnson Decl. ¶¶4-6.)

7.      Hy Cite has updated and modified its Distributorship Agreement and its Distributorship Manual numerous times since entering the cookware sales industry. (Johnson Decl. ¶8.)

**Defendant's Response:**     Denied.  Hy Cite and Pollack executed a distributorship agreement (the "1987 Distributorship Agreement") in 1987 and it was never amended or modified. Conversely, Hy Cite's Distributor Manual was modified

3

several times by Hy Cite since Hy Cite entered the cookware sales industry. (Pollack Declaration ¶¶ 18 and 25).

**Hy Cite's Reply:**    Hy Cite and Selected Designs, Inc. executed a distributorship agreement on January 16, 1987 (the "1987 Agreement") and Defendant signed the agreement on behalf of Selected Designs, Inc.  (*See* Docket No. 16, Ex. B.)  Hy Cite's distributorship agreement was modified several times since entering the cookware sales industry, as evidenced by the fact that the 1987 Agreement is different than the post January 1987 unsigned "Royal Prestige Distributorship Agreement" that Defendant originally submitted with his arbitration demand (for example, Royal Prestige Credit, Inc. is listed as a party on one but not the other).  *Compare* the 1987 Agreement (Docket No. 16, Ex. B.) *with* the Unsigned and Undated "Royal Prestige Distributorship Agreement" (Docket No. 8, ¶6, Ex. A) and *with*  2010 Agreement (Docket No. 8, ¶12, Ex. C).

8.    Each new version of Hy Cite's Distributorship Agreement and its Distributorship Manual is intended to supplant any previous versions of either document.  (Johnson Decl. ¶9.)

**Defendant's Response:**    Denied. By its terms, the 1987 Distributorship Agreement could not be amended or modified except by a document called an amendment and signed by all parties. (Pollack Declaration ¶ 26).

**Hy Cite's Reply:**    Defendant's point about amending or modifying the 1987 Agreement does not dispute the fact that later Distributorship Agreements and Manuals are intended to supplant and replace previous versions of either document.

4

(Docket No. 8 at ¶9.)  In fact, Defendant recognizes that new agreements would supplant old ones by his statement that the 1987 Agreement supplanted an earlier agreement from 1984.  (Docket No. 16 at ¶ 25, n.3.)

9.     Defendant, through various self-owned entities, has functioned as a Hy Cite distributor for many years, since at least 1984.  (Johnson Decl. ¶10.)

**Defendant's Response:**     Admitted.

10.    According to Hy Cite's records, during the entire time Defendant functioned as a distributor, Defendant, in his individual capacity, did not execute any distributor agreement with Hy Cite.  (Johnson Decl. ¶10.)

**Defendant's Response:**     Denied. Pollack signed the Distributorship Agreement in 1987. For nearly 25 years, Hy Cite and Pollack relied on the 1987 Distributorship Agreement to govern their relationship. (Pollack Declaration ¶¶ 10 and 19).

**Hy Cite's Reply:**     Although Defendant signed the 1987 Agreement, he did so in his capacity as President of and on behalf of Selected Designs, Inc.  (*See* Docket No. 16) Ex. B at HCE000037.)  Accordingly, this does not refute that during the entire time Defendant functioned as a distributor, Defendant, in his individual capacity, did not execute any distributor agreement with Hy Cite.  (Docket No. 8 at ¶10.)

11.    As a distributor, Defendant (or one of his self-owned entities) was involved in the purchase and sale of cookware, recruiting and establishing a network of down-line distributors, and in turn receiving various economic benefits such as volume

5

discounts, rebates and recruiting bonuses (pursuant to the "Marketing Plan").  (Johnson Decl. ¶17.)

**Defendant's Response:**    Admitted.

12.    Defendant remained a distributor until October 3, 2011, when he was terminated by Hy Cite.  (Johnson Decl. ¶11, Ex. B.)

**Defendant's Response:**    Denied. Hy Cite attempted to terminate Pollack's distributorship on September 23, 2011 and again on November 7, 2011 (the latter notice contained no reason for the termination or why two notices were sent). Such attempted termination was a breach of the 1987 Distributorship Agreement. (Pollack Declaration ¶ 29).

**Hy Cite's Reply:**    Defendant's response is merely an attempt to re-characterize the fact that he received a letter terminating his distributorship relationship with Hy Cite on October 3, 2011.  (Docket No. 8 at ¶11, Ex. B.)  Defendant's statement about any alleged breach of the 1987 Agreement is not a fact and is not supported by any citation to evidence as required by Section III, 2, (b), of the Court's "Procedures To Be Followed On Motions For Injunctive Relief."  Finally, Defendant did not sign the 1987 Agreement in his individual capacity but as president of Selected Designs, Inc.  (Docket No. 16, Ex. B at HCE000037.)

13.    In January of 2010, Hy Cite provided an updated version of its Distributorship Agreement (the "2010 Agreement") to all its distributors, including Defendant, by uploading the document to Hy Cite's distributors' website.  (Johnson Decl. ¶12, Ex. C and ¶13.)

6

**Defendant's Response:** Admitted in part. Pollack lacks knowledge or information as to what Hy Cite did in connection with all of its distributors. Pollack never saw the "2010 Agreement" on Hy Cite's distributor's website and he never executed the 2010 Agreement or any other distributorship agreement after the 1987 Distributorship Agreement. Pollack further avers that Hy Cite did hand out a document, which purported to be a draft distributorship agreement (the "Draft"), at the bi-annual Territorial Director's meeting in Newark, New Jersey in November, 2009 (together with a chart summarizing the purported differences between the Draft and the 1987 Distributorship Agreement.) Pollack never executed the Draft and never intended to be bound by it. Nevertheless, Hy Cite continued treat Pollack as a distributor under the 1987 Distributorship Agreement. (Pollack Declaration ¶¶ 27-28.)

**Hy Cite's Reply:** Hy Cite has no record of Defendant ever expressing dissatisfaction with the Draft agreement or the 2010 Agreement or of any intention not to be bound by the 2010 Agreement. (Second Johnson Decl. ¶ 7.) Additionally, Hy Cite provided an initial and subsequent announcement about the 2010 Agreement, which resulted from the Draft agreement, making clear that signing the 2010 Agreement was a requirement and that the 2010 Agreement would govern distributorships on and after February 1, 2010. (Docket No. 8, ¶15.)

14. On the distributors' website, all distributors were informed that they needed to sign the 2010 Agreement and return it to Hy Cite no later than January 31, 2010. (Johnson Decl. ¶14.)

**Defendant's Response:**     Denied. Pollack denies ever seeing any such notice on the distributors' website.

**Hy Cite's Reply:**     Regardless of whether Defendant actually saw the notice, there is no dispute that it was provided.  Further, Defendant would have had to have intentionally ignored the obvious messages on the distributor website to avoid receiving such notice.  (Second Johnson Decl. ¶ 8.)

15.     The distributors' website is accessed by distributors using a password and it provides important announcements, current copies of the Distributorship Agreement and Distributor Manual, and critical financial information for each distributor, including updated financial information regarding the distributor's accounts and payments under the Marketing Plan.  (Johnson Decl. ¶18.)

**Defendant's Response:**     Admitted in part. Hy Cite does maintain a distributors' website and Pollack had access to it by using a password. The distributors' website contains such information as the amount of money that Pollack earned in a particular month under the Marketing Program for benefits and overrides (as referenced to by Hy Cite). Pollack denies that the distributors' website was used to provide current copies of his distributorship agreement as the 1987 Distributorship Agreement is the current agreement concerning Pollack's distributorship. (Pollack Declaration ¶ 27, fn 3).

**Hy Cite's Reply:**     Defendant's response does not deny that the website provided distributors with copies of the current Distributorship Agreement and Distributor Manual.  Defendant merely offers the legal conclusion that the agreements

posted on the website do not apply to him. Accordingly, the fact proposed by Hy Cite is not disputed.

16. Defendant is recorded as having accessed the website more than 20 times since February 15, 2010, and his termination on October 3, 2011. (Johnson Decl. ¶19, Ex. D.)

**Defendant's Response:** Pollack did access the distributors' website on a number of occasions since February 15, 2010 to determine the amount due him under the Marketing Program. Pollack further avers that, given that the spreadsheet attached to the Johnson Declaration as Exhibit D shows user names other than Pollack's (Pollack's user name was 10449 – his distributorship number), upon information and belief, Pollack contends that some of the 20 entries shown on the spreadsheet may have resulted from access to the website by others. (Pollack Declaration ¶ 27, fn 4).

**Hy Cite's Reply:** Defendant's response is unresponsive to the fact proposed and thus, he does not dispute Hy Cite's proposed fact.

17. Hy Cite provided an initial and subsequent announcement about the 2010 Agreement, making clear that signing the 2010 Agreement was a requirement and that the 2010 Agreement would govern distributorships on and after February 1, 2010. (Johnson Decl. ¶15.)

**Defendant's Response:** Denied. Pollack never saw the agreement or any such announcement. (Pollack Declaration ¶¶ 27-28).

**Hy Cite's Reply:** Whether Defendant saw the 2010 Agreement or the announcement does not dispute the fact that both were provided on the website.

18.     Defendant continued to act as a Hy Cite distributor, including receipt of Marketing Plan payments, after February 1, 2010.  (Johnson Decl. ¶16.)

**Defendant's Response:**     Admitted.

19.     In 2011, Hy Cite learned that Defendant had repeatedly attempted to recruit Matt Rubin to sell Royal Prestige brand cookware without the permission of Rob Arken.  (Johnson Decl. ¶11, Ex. B.)

**Defendant's Response:**     Denied. Pollack never attempted to recruit Matt Rubin to sell products for Pollack. (Pollack Declaration ¶ 32).

**Hy Cite's Reply:**     Hy Cite disputes Defendant's denial about whether he had repeatedly attempted to recruit Matt Rubin to sell Royal Prestige brand cookware without the permission of Rob Arken, though this dispute does not impact the elements for preliminary injunction.

20.     Rob Arken is a Hy Cite distributor who had been one of the distributors in Defendant's down-line distributor network.  (Johnson Decl. ¶21.)

**Defendant's Response:**     Admitted. Pollack further avers that Pollack brought Arken into Hy Cite as a distributor. (Pollack Declaration ¶ 32).

**Hy Cite's Reply:**     For purposes of this reply only, Hy Cite does not dispute that Defendant brought Arken in as a Hy Cite distributor, but in all events, this does not impact the elements for preliminary injunction.

21.     Matt Rubin is a salesperson engaged by Rob Arken's distributorship. (Johnson Decl. ¶20.)

**Defendant's Response:**   Admitted. Pollack further avers that Matt Rubin is also Rob Arken's stepbrother. (Pollack Declaration ¶ 32).

**Hy Cite's Reply:**   For purposes of this reply only, Hy Cite does not dispute whether Rubin and Arken are stepbrothers, but in all events, this does not impact the elements for preliminary injunction.

22.   Recruiting Matt Rubin from beneath Rob Arken would have increased Defendant's revenue and income to the detriment of Arken. (Johnson Decl. ¶22.)

**Defendant's Response:**   Denied. Plaintiff's allegation is not a factual statement, but speculation. In addition, Pollack already received compensation for Arkin's sales (and therefore Matt Rubin's sales) since Pollack brought Arkin into Hy Cite as a distributor. (Pollack Declaration ¶ 32).

**Hy Cite's Reply:**   Defendant does not dispute that he would have received an increase in revenue and income to the detriment of Arken if he had recruited Rubin from beneath Arken, nor could he. (Docket No. 8 at ¶22.)

23.   Solicitation or recruitment of a sales representative for another Hy Cite distributor in an effort to curtail the sales representative's business relationship with that distributor is forbidden under the distributor agreements and distributor manual. (Johnson Decl. ¶6, Ex. A and ¶12, Ex. C, § 9.3.)

**Defendant's Response:**   Denied. Pollack refers this Court to the 1987 Distributorship Agreement and the manual for their content, meaning and import.

**Hy Cite's Reply:**   Defendant fails to cite any evidentiary support for its response and thus, the response fails to comply with Section III, 2, (b), of the Court's

11

"Procedures To Be Followed On Motions For Injunctive Relief." Accordingly, the fact should be admitted.

24.  In 2010 and 2011, Defendant failed to meet his annual distributor cookware purchase requirement. (Johnson Decl. ¶11, Ex. B.)

**Defendant's Response:** Denied. Pollack had over $5,000,000 of sales in 2010 and 2011. In addition, Hy Cite terminated Pollack before the end of 2011, and therefore Hy Cite prevented Pollack from making additional sales to satisfy any purported quota for 2011. Pollack further avers that the purported quota was waived.

**Hy Cite's Reply:** Defendant fails to cite any evidentiary support for its response and thus, the response fails to comply with Section III, 2, (b), of the Court's "Procedures To Be Followed On Motions For Injunctive Relief." Accordingly, the fact should be admitted.

25.  On September 23, 2011, Hy Cite emailed Defendant a letter, providing him with notice that his distributorship would be terminated on October 3, 2011, for attempting to recruit another distributor's salesman and failing to meet his annual distributor cookware purchase requirement. (Johnson Decl. ¶11, Ex. B.)

**Defendant's Response:** Admitted in part. Admit that the letter was received by Pollack. Pollack denies Hy Cite terminated his distributorship. Pollack further avers that on November 7, 2011, Hy Cite sent Pollack another letter attempting to terminate his distributorship. (Pollack Declaration ¶ 29).

**Hy Cite's Reply:** Defendant's response is merely an attempt to re-characterize the fact that he received a letter terminating his distributorship relationship with Hy

12

Cite on October 3, 2011. (Docket No. 8 at ¶11, Ex. B.) Thus, the proposed fact should be admitted in its entirety.

26. On January 12, 2012, Defendant filed a demand with the American Arbitration Association in New York for arbitration against Hy Cite regarding the alleged wrongful termination of his distributorship. (Johnson Decl. ¶6, Ex. A.)

**Defendant's Response:** Admitted in part. Admit except that the Demand was filed against Hy Cite Corp. not HCE as alleged.

**Hy Cite's Reply:** Hy Cite Enterprises, LLC subsumed all of Hy Cite Incorporated's assets and liabilities. (Second Johnson Decl. ¶¶4-6.) Thus, Hy Cite Enterprises, LLC is the proper party to respond to Defendant's arbitration demand.

27. Attached to the arbitration demand is an unsigned and undated "Royal Prestige Distributorship Agreement." (Johnson Decl. ¶6, Ex. A.)

**Defendant's Response:** Admitted in part. Admit that attached to the Demand is an unsigned version of an agreement, which contains the identical arbitration provision as the signed 1987 Distributor Agreement attached as Exhibit A to the Pollack Declaration.

**Hy Cite's Reply:** Defendant admits that the demand included an unsigned and undated agreement. Defendant's additional response is unresponsive to the fact proposed and thus, he does not dispute Hy Cite's proposed fact. Further, the arbitration provisions in the Agreements are not, in fact, identical. For example, one refers to "Hy Cite or RPC," while the other refers to Hy Cite only (as the "Company").

13

*Compare* the 1987 Agreement (Docket No. 16, Ex. B.) *with* the Unsigned and Undated "Royal Prestige Distributorship Agreement" (Docket No. 8, ¶6, Ex. A).

28. In his arbitration demand, Defendant seeks various amounts of money totaling in excess of $200,000. (Johnson Decl. ¶6, Ex. A.)

**Defendant's Response:** Admitted.

29. Defendant references the unsigned and undated "Royal Prestige Distributorship Agreement" as the authority for his arbitration demand. (Johnson Decl. ¶6, Ex. A.)

**Defendant's Response:** Admitted in part. Admit that attached to the Demand is an unsigned version an agreement, which contains the identical arbitration provision as the signed 1987 Distributor Agreement attached as Exhibit A to the Pollack Declaration.

**Hy Cite's Reply:** Defendant admits that the demand references an unsigned and undated agreement as the authority for his arbitration demand. Defendant's additional response is unresponsive to the fact proposed and thus, he does not dispute Hy Cite's proposed fact. Further, the arbitration provisions in the Agreements are not, in fact, identical. For example, one refers to "Hy Cite or RPC," while the other refers to Hy Cite only (as the "Company"). *Compare* the 1987 Agreement (Docket No. 16, Ex. B.) *with* the Unsigned and Undated "Royal Prestige Distributorship Agreement" (Docket No. 8, ¶6, Ex. A).

30. In relevant part the arbitration provision in the unsigned and undated "Royal Prestige Distributorship Agreement" states:

14

> Any disputes regarding operation of the Program, and affecting the rights of the Company, and specifically confined to the interpretation of this Part IV of this Agreement and any portions of the Distributor's Manual incorporated herein and relevant to such dispute, shall be submitted for binding arbitration under the usual rules and procedures of the American Arbitration Association and Chapter 788 of the Wisconsin States as amended or renumbered.

(Johnson Decl. ¶6, Ex. A, ¶13.)

**Defendant's Response:** Admitted. Admit that the Distributor Agreement provides, in part, what Plaintiff states it does.

Dated this 23rd day of March, 2012.

**MICHAEL BEST & FRIEDRICH LLP**


By:   s/ Amy O. Bruchs
    Michelle L. Dama, SBN 1041809
    Amy O. Bruchs
    Albert Bianchi, Jr.
    One South Pinckney Street, Suite 700
    P.O. Box 1806
    Madison, WI 53701-1806
    Telephone: (608) 257-3501
    Fax: (608) 283-2275
    Email: mldama@michaelbest.com
           aobruchs@michaelbest.com
           abianchi@michaelbest.com

Attorneys for Plaintiff Hy Cite Corporation