UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
-------------------------------------------------------------------- x
: Case No.: 12-cv-73 (BBC)
HY CITE ENTERPRISES, LLC, :
:
                     Plaintiff, :
:
      -v - :
:
:
STEVEN POLLACK, :
SELECTIVE DESIGNS OF NEW YORK, INC., :
AND TRISTATE R.P., INC., :
:
                 Defendants.   x
--------------------------------------------------------------------

# DEFENDANTS' BRIEF IN SUPPORT OF
# MOTION FOR RECONSIDERATION

STAFFORD ROSENBAUM LLP
*Attorney for Hy Cite Enterprises, LLC*
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
(608) 259.2642

{00565691.DOC;2 }      1

*INTRODUCTION*

On April 9, 2012, this court issued an order granting plaintiff's motion for temporary injunction to stay the arbitration that defendant Steven Pollack ("Pollack") initiated in New York. Pollack files this motion for reconsideration to demonstrate to the court that claim 1 in Pollack's demand for arbitration falls squarely under the Marketing Program set forth in Section IV of the 1987 Agreement. Therefore, claim 1 in Pollack's demand for arbitration is encompassed in the arbitration provision in the parties' 1987 "Royal Prestige Distributorship Agreement" ("1987 Agreement"), which applies to issues arising out of Section IV. As a result, Pollack respectfully requests that this court amend its order to allow arbitration to proceed in New York, at least as to claim 1.

*FACTS*

Facts are set forth in the parties' prior submissions.

*DISCUSSION*

I. CLAIM 1 IN POLLACK'S DEMAND FOR ARBITRATION FALLS UNDER THE ARBITRATION PROVISION IN THE 1987 AGREEMENT.

The arbitration provision at issue in this case is found in paragraph 13 of Section IV of the 1987 Agreement. It applies to issues arising under the "Royal Prestige Marketing Program" (hereafter "Marketing Program") set forth in Section IV of the 1987 Agreement. (*See* Pollack Dec., ¶ 6, Ex. B, Doc. # 16, p. 5; *see also* ¶ 20.)

Pollack's demand for arbitration asserts four claims: (1) breach of contract for termination without lifetime benefits of a Master; (2) breach of contract for failing to pay "spin-out" adjustments due a Master; (3) termination without proper notice; and (4) improper deduction from 2011 commission check. (*See* Johnson Dec., ¶ 6, Ex. A; Doc. #8-1, p. 2.) As

plaintiff pointed out in its reply brief, Pollack's first claim is actually two claims: (1)(a) breach of contract for termination without payment of lifetime benefits; and (1)(b) breach of the contractual duty of good faith and fair dealing for termination without payment of lifetime benefits. Whether viewed as one or two claims, Pollack's first claim is for his lifetime benefits that he earned by becoming a "Master" under the Marketing Program.

In his response brief, Pollack attempted to show that the central issues involved in his demand for arbitration fall under the Marketing Program set forth in Section IV of the 1987 Agreement. (*See* Response Br., Doc. # 15, p. 8; *see also generally* Pollack Dec., Doc. # 16.) At the time, Pollack believed it was clear that claim 1, involving the lifetime benefits, fell under the Marketing Program and was therefore, arbitrable. In its response brief, Pollack asked the court not to bifurcate the case into two proceedings if the court believed other claims were not arbitrable. (*See* id.)

On April 9, 2012, this court issued an order granting plaintiff's motion to stay the arbitration. That order reads in part:

> Defendant says that Part IV covers any "benefits" he is promised under the distribution agreement, but he fails to cite any provision that supports this expansive interpretation. Part IV refers specifically to "bonuses, discounts, rebates and reduced prices," not generally to all "benefits." There is no mention in Part IV of "commissions" or "spin-out adjustments" and defendant develops no argument that either of these items are encompassed by any of the benefits listed. (Neither side relies on or even discusses the context of the distribution manual.) Although it may be that defendant ultimately can show that Part IV of the agreement covers these claims, I decline to engage in an exercise of contract interpretation in the absence of any reason suggested by defendant to do so.

(Opinion and Order, Doc. # 25, p. 7.)

Pollack respectfully disagrees with the court's decision in this regard. Pollack's declaration explains the marketing program and the benefits he received there from, and includes all the necessary contractual provisions to establish that Claim 1 in the demand for arbitration falls squarely under the Marketing Program set forth in Section IV of the 1987 Agreement. (*See* Pollack Dec., ¶¶ 13-22, ¶ 25.)[1] As stated above, this claim involves lifetime benefits due a "Master." Pollack will now set forth the specific relevant provisions of the 1987 Agreement and the Distributorship Manual describing the benefits and what it means to be a Master.

Section VI of the 1987 Agreement sets forth the Marketing Plan. Paragraph 11, entitled "Financial Incentives to Distributors Under the Program" states:

> 11. Under the Royal Prestige Marketing Program (the Program), Distributor will be entitled to receive the benefit of certain bonuses, discounts, rebates and reduced prices. The Company will develop and maintain the following features as a continuing part of the Program.

Section (c) of Paragraph 11, entitled, "Sponsoring/Recruiting Bonus" states:

> (c) For recruiting or sponsoring a distributor, Distributor shall be paid a bonus, computed as a percentage of the purchases of merchandise by such other distributor. The percentage applied may depend upon the amount of merchandise purchased by the other distributor. **This bonus will be paid to the original recruiting or sponsoring Distributor for an indefinite term, to continue as long as the Company or its successors or assigns continue in the business which is the subject of this Agreement.**

(Pollack Dec., ¶ 6, Ex. B, p. 4.) [Emphasis Added.] The bolded portion of the above clause captures the "lifetime" concept of the bonus to be paid to the distributor. What that bonus is, and how it is calculated, is set forth below.

As the court noted, and neither party disputes, the Distributorship Manual ("Manual") is incorporated as part of the Marketing Program set forth in Section IV of the 1987 Agreement.

---

[1] For the purposes of this motion, Pollack will focus on claim 1 set forth in the demand for arbitration. Pollack reserves his right to assert later on in this litigation that his other claims are also arbitrable.

Section 5 of the Manual addresses the Marketing Plan. (Pollack Dec., ¶ 25, Ex. E.) Sections 5.1 and 5.2 are an overview of the plan and some general policies, respectfully. Sections 5.3 through 5.5 explain different levels of bonuses and other benefits due to distributors who achieve certain levels. Section 5.6, entitled, "Sponsoring a Territory" addresses the concept of "spin-out" and "Master" as described in Pollack's Declaration. It reads:

> **5.6 Sponsoring a Territory**
>
> When we have a territory within a territory that reaches a volume sufficient to spin out (see Exhibit 6.6) certain additions are made to the Marketing Plan to provide fair compensation and recognition. Once a Territory Director has sponsored and spun out a territory, he or she will become a Master.
>
> **5.6.1. MASTER**
>
> A Master accrues the following additional benefits:
>
> - A permanent 14% discount is paid on your network purchases regardless of what your network purchases amount to.
>
> - **You will receive a 2% bonus on the purchases of the entire sponsored territory with no requirement to service that territory.**[2]
>
> - The 2% bonus is effective when the territory reaches the 14% discount level. **It becomes permanent when the territory spins-out**.[3]
>
> - Three generations of bonus are paid out on territory spinouts. 1st generation is 2%, 2nd generation is 1% and 3rd generation is ½ of 1%.
>
> - The volume of the Master and the spun out territory is combined and published in the Pacemaker on an annual basis in the Masters Club for the entire year.

---

[2] [Emphasis added]
[3] [Emphasis added]

(Pollack Dec., ¶ 25, Ex. E., p. 40.) There is no dispute that Pollack has achieved Master status and is therefore entitled to the 2% lifetime bonus and other benefits set forth in Section 5.6 of the Manual.[4]

With the benefit of the above specific provisions of the Marketing Plan, defendant's testimony can now be more easily placed in context by the court:

"…I was one of the first two distributors that Hy Cite bestowed upon the title of "Master Territory Director," which was only given to distributors that were the best of the best. I was so successful as a Hy Cite distributor that my territory was "spun-out," a colloquial term that Hy Cite used to mean that my distributorship became its own territory and was no longer under any other distributorship. This was significant because Master Territory Director earned lifetime benefits and commission, which Hy Cite called "overrides" on sales made by distributors that were in my "spun-out" territory." (Pollack Dec., ¶ 13.)

"Among the distributors who were in my "spun-out" territory was a man named Henry Pacheco. Henry's territory has been responsible for over a half a billion ($500,000,000) dollars in sales of Hy Cite's products… As a result, my "spun-out" territory has been responsible for over $500,000,000 in sales." (*See id.*, at ¶ 14.)

According to Paragraph 11(c) of the 1987 Agreement, and Section 5.6.1 of the manual, Pollack would be entitled to 2% of Henry Pacheco's sales indefinitely into the future so long as Hy Cite is in the business. This is the lifetime benefit or, perhaps more adeptly described, bonus or earned income stream which is the subject of claim 1 in Pollack's demand for arbitration.[5]

---

[4] Section 6.6 of the Manual provides examples of Marketing Plans.
[5] Whether Pollack's attorneys call them lifetime benefits, commissions, or bonuses should not matter. The point is that Pollack has earned a lifetime income stream, part of which is calculated as percentage of sales from distributors underneath him. The majority of that stream is the 2% bonus Pollack has earned on all sales from Henry Pacheco's territory. This income stream, along with the other perks, are part of the Marketing Program set forth in Section IV of the 1987 Agreement, with the specific benefits and formulas provided for in Section 5.6 of the Distributorship Manual. Under the 1987 Agreement, Pollack earned these so long as Hy Cite is in business

Pollack's declaration continues: "…It is the lifetime benefits of a Master Territory Director under the Marketing Program of which Hy Cite is attempting to deprive me when it sent me the notices in September, 2011 and again in November, 2011, purportedly to terminate my distributorship. That I earned, and therefore am entitled to these benefits under the Marketing Program is the subject of the Demand for Arbitration that I filed with the AAA." (*See id*., at ¶ 15.)

In summary, the lifetime benefits referenced in claim 1 of Pollack's demand for arbitration fall squarely under the Marketing Program in Section IV of the 1987 Agreement.

Significantly, Hy Cite does not dispute this. That is, Hy Cite does not assert that the benefits referred to in claim 1 and in Pollack's declaration are not encompassed within the Marketing Program.[6] Rather, Hy Cite asserts that claim 1 is a claim for wrongful termination, which falls outside the scope of Section IV. Hy Cite misses the point. Hy Cite's termination of Pollack *without paying the lifetime benefits* is the claim. If they terminated him and continued to pay those benefits, claim 1 would not exist. Stated differently, if the other side wishes to characterize the claim as one for wrongful termination, then the "wrongful" part is the failure to pay the earned lifetime bonuses. This is not a claim contesting the cause or notice of Pollack's termination. This claim *is* the claim for the Master bonuses/lifetime benefits.

II.   BECAUSE CLAIM 1 IS ARBITRABLE, THIS COURT SHOULD AMEND ITS ORDER TO ALLOW THE ARBITRATION TO PROCEED ON CLAIM 1.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides "that a written provision in any contract evidencing an intent to settle by arbitration any future controversy

---

regardless of termination of his distributorship. That is what claim 1 is about and it should be arbitrated.

[6]   This also means that Pollack's declaration remains uncontroverted. That is, Pollack has testified under oath that his demand for arbitration is about Hy Cite's failure to pay him the lifetime benefits he earned under the Marketing Program set forth in Section VI of the 1987 Agreement. The other side does not contest this point, at least as to claim 1 in the demand for arbitration, leaving the court with uncontested evidence of the fact.

arising out of such contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *French v. Wachovia Bank,* 574 F.3d 830, 834 (7th Cir. 2009) (internal quotations omitted) (quoting *Livingston v. Assocs. Fin., Inc.,* 339 F.3d 553, 556 (7th Cir. 2003) and 9 U.S.C. § 2). A court "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l. Union v. TriMas Corp.,* 531 F.3d 531, 536 (7th Cir. 2008) (internal quotations omitted). "Any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." See *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998) (stating that "once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration").

The Act requires that if a dispute presents multiple claims, some arbitrable and some not, then the former must be sent to arbitration even if this will lead to piecemeal litigation. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 216-217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). As a result, state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration. *See Id.* As stated by the United States Supreme Court:

> …the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. 470 U.S., at 218, 105 S.Ct. 1238

> (emphasis in original). Thus, when a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id*. at 217, 105 S.Ct. 1238. To implement this holding, courts must examine a complaint with care to assess whether any individual claim must be arbitrated. The failure to do so is subject to immediate review. See *Southland Corp. v. Keating*, 465 U.S. 1, 6-7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

*KPMG LLP v. Cocchi,* 132 S. Ct. 23, 25-26 (2011).

Pollack respectfully submits that claim 1 in his demand for arbitration is arbitrable. Under the FAA as set forth above, this court should therefore allow claim 1 to proceed in arbitration.

## *CONCLUSION*

For the reasons stated above, Pollack respectfully requests that the court amend its prior order staying the arbitration to allow claim 1 in the demand for arbitration to continue in arbitration.

Dated: May 7, 2012.

        STAFFORD ROSENBAUM LLP

        By:    /s/ Jon Evenson
        Brian Butler
        Jon Evenson
        222 West Washington Avenue, Suite 900
        P.O. Box 1784
        Madison, Wisconsin 53701-1784
        (608) 259.2642
        *Attorneys for Defendant Steven Pollack*