UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

HY CITE ENTERPRISES, LLC,

        Plaintiff,

    v.

STEVEN POLLACK,
SELECTIVE DESIGNS OF NEW YORK, INC.
and TRISTATE R.P., INC.,

        Defendants.

Case No.: 12-cv-73-bbc

**PLAINTIFF HY CITE ENTERPRISES, LLC'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

      Defendants come to the Court seeking reconsideration of the Court's order to preliminarily enjoin Defendants from pursuing arbitration against Hy Cite. However, they come without any new facts or legal arguments, in disregard of the standards for reconsideration. Instead, Defendants merely repackage their previous arguments to try to avoid the Court's ruling. However, even with this attempted second kick at the cat, Defendants still fail to show that any of their claims are covered by the arbitration provision in the 1987 Agreement (or for that matter that the 1987 Agreement even governed the relationship with Hy Cite at the time of termination). Accordingly, Defendants' motion for reconsideration should be denied; whether defendants ultimately can show that any of their claims are arbitral should be left for dispositive motions.

# ARGUMENT

## I. The Court did not Make a Manifest Error of Law or Fact.

Noticeably absent from Defendants' motion is the applicable standard for motions for reconsideration. The Seventh Circuit has explained that a motion for reconsideration of an order granting a preliminary injunction should be treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *See Financial Servs. Corp. v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985). "Rule 59 motions are a mechanism to bring to the court's attention a manifest error of law or fact." *Irish v. Burlington N. Santa Fe Ry. Co.*, 632 F. Supp. 2d 871, 874 (W.D. Wis. 2009). Defendants have failed to point out any such error in the Court's decision and therefore the motion should be denied.

## II. The Injunction Is Supported By Other Arguments Made In Hy Cite's Preliminary Injunction Motion.

As the Court noted in its April 9, 2012 order, Hy Cite provided several bases as to why it cannot be required to arbitrate with Defendants. (Docket No. 25, at 5.) The Court only needed to address one: "the arbitration agreement on which defendant is relying does not apply to any of the claims that defendant has raised in his arbitration demand." (*Id.*) The Court's decision to stop with that argument is supported by the fact that to satisfy its burden to show a likelihood of success on the merits, Hy Cite needed to only establish "a better than negligible" chance of showing there is no agreement between Hy Cite and Defendants to arbitrate. *Wolf Appliance, Inc. v. Viking Range Corp.*, 686 F. Supp. 2d 878, 886 (W.D. Wis. 2010). However, that the Court needed to only address one argument to find that Hy Cite has a strong likelihood of success on

2

the merits does not nullify the other arguments.  Indeed, the other arguments not addressed by the Court (including that as non-signatories Defendants cannot enforce the 1987 Agreement and that there is no written agreement between Hy Cite and Defendants to arbitrate any claims) also provide the Court with ample support to uphold its decision to grant Hy Cite the injunction it requested.  Therefore, Hy Cite incorporates here, in its opposition to Defendants' motion for reconsideration, all other arguments raised in its briefs but not specifically addressed in the Court's order.

### III.   Defendants' Claim For Breach Of Contract For Termination Without Payment Of Lifetime Benefits Is Not An Arbitral Issue.

In finding that Hy Cite has a strong likelihood of success on the arbitration issue, the Court held:  "[b]ecause the arbitration agreement is limited to 'the interpretation of this Part IV of this Agreement' and any relevant portions of the Distributor's Manual, defendant must show that all his claims meet this limitation.  He has failed to do this." (Docket No. 25, at 6.)  In seeking reconsideration, Defendants do not dispute the applicability of this limitation, but contend that their claim for "lifetime benefits due a 'Master'" "falls squarely under" Section IV of the 1987 Agreement. (Docket No. 30, at 4.) Defendants' contention is not only a repeat argument, (*see* docket no. 15, at 8 ("[H]aving achieved the Hy Cite title of 'Master,' Claimant was entitled to said commissions, bonuses, marking incentives and other benefits, including, without limitation, commission for referrals to other distributors, for his entire lifetime . . . [w]hat Pollack is seeking are the lifetime benefits he earned")) but one the Court specifically rejected. (*Id.* at 6-7 (rejecting Defendants' argument that "Part IV covers any 'benefits' he is promised

3

under the distribution agreement" because "Part IV refers specifically to 'bonuses, discounts, rebates and reduced prices,' not generally to all 'benefits'").) The Court should reject this argument again.

As an initial matter, Defendants' characterization of Steven Pollack's declaration as a source of facts that Hy Cite does not dispute is simply false. As Hy Cite made clear in its reply to Defendants' response to Hy Cite's statement of proposed findings of fact, it objects to the numerous alleged facts included in Pollack's declaration. (Docket No. 18, at 1 n.1.) Had Defendants submitted their own additional proposed findings of fact in numbered paragraphs each including a single factual statement, as opposed to a lengthy declaration that includes a gaggle of facts and legal conclusions in the various paragraphs, Hy Cite could have challenged and objected with more specificity rather than the blanket objection that was necessitated by Defendants' chosen format. Nonetheless, Defendants' skirting of the Court's procedures does not permit them to now argue that "Pollack's declaration remains uncontroverted." (Docket No. 30, at 7 n.6.)

Addressing the substantive issue, the fact remains that Defendants' alleged "lifetime benefits due a 'Master'" are **not** encompassed by Part IV of the 1987 Agreement. In their latest brief, Defendants contend that Claim 1 of the arbitration demand asserts "breach of contract for termination without lifetime benefits of a

Master."[1] (Docket No. 30 at 2.) Defendants also contend that it is section 5.6 of the Distributor's Manual which entitles them to these "Master benefits." (*Id*. at 5.) Further, Defendants cite Section 11(c) of Part IV as the section of the 1987 Agreement that entitles them to arbitration over their alleged right to the Master benefits contained in section 5.6.1 of the Distributor's Manual.[2] Again, none of this information is new to the Court (it having already been provided to the Court in opposition to Hy Cite's motion), but in any event, the argument is just as faulty the second time as it was the first time.

Defendants' contention remains unsupported by the plain language of both the 1987 Agreement and Distributor's Manual. The plain language of section 11(c) of the 1987 Agreement states that a distributor is entitled to a bonus "for recruiting or sponsoring a *distributor*." (Docket No. 16-2, at HCE000032 (emphasis added).) Upon review of the Distributor's Manual, it is apparent that benefits for sponsoring a *distributor* are contained in section 5.4 of the Distributor's Manual, which is entitled "Rewards for Sponsoring a *Distributor*." (Docket No. 16-5, at 40 (emphasis added).) Section 5.4 states in relevant part:

> To receive the sponsoring rebates, a Distributor must have sponsored a Distributor. . . . The sponsoring rebate consists of a bonus on the monthly

---

[1] Hy Cite believes that Defendants' first claim in their arbitration demand plainly alleges a claim for wrongful termination and is not merely a claim for "lifetime benefits due a Master." Nonetheless, even accepting Defendants' mischaracterization of its first claim in its arbitration demand, that claim is not encompassed within the 1987 Agreement's arbitration clause limitation as recognized by the Court.

[2] Hy Cite notes that although Defendants use a 2008 Distributor's Manual, there was a 2010 Distributor Manual that governed distributorships at the time of Pollack's termination. Without waiving its objection to the use of the 2008 Distributor's Manual, Hy Cite will use that Manual in its arguments here.

5

purchase volume of the sponsored Distributor and a finance charge rebate.

(*Id.* at 40-41.) Thus, section 11(c) of Part IV parallels section 5.4 of the Distributor's Manual, not section 5.6.

Indeed, a comparison of the Agreement and the Manual definitively shows that each specific subsection of Part IV, Section 11 in the Agreement has an easily-identifiable companion section the Manual. However, there is no subsection in Part IV, Section 11 that addresses benefits due a Master for sponsoring a territory. A summary of this comparison is provided below for the Court's reference.

| Part IV, Section 11 of 1987 Distributorship Agreement | Comparable Provisions Under 2008 Distributor's Manual |
|---|---|
| Section 11(a) – Price Levels | Section 6.5 – Price Levels |
| Section 11(b) – Discount Rates | Section 6.1 – Financing Charges (Financing Discount) |
| Section 11(c) – Sponsoring/Recruiting Bonus: "For recruiting or *sponsoring* a *distributor*, Distributor shall be paid a *bonus*, computed as a percentage of the purchases of merchandise by such other distributor." | Section 5.4 – Rewards for Sponsoring a Distributor: "To receive the sponsoring rebates, a Distributor must have *sponsored* a *Distributor*. . . . The sponsoring rebate consists of a *bonus* on the monthly purchase volume of the sponsored Distributor . . . ." |
| Section 11(d) – Sponsoring *Finance Charge Rebate*: "For *sponsoring* a *distributor*, Distributor shall be paid a percentage of the retail finance business . . . ." | Section 5.4 – Rewards for Sponsoring a Distributor: "To receive the sponsoring rebates, a Distributor must have *sponsored* a *Distributor*. . . . The sponsoring rebate consists of . . . a *finance charge rebate*." |

6

| **Part IV, Section 11 of 1987 Distributorship Agreement** | **Comparable Provisions Under 2008 Distributor's Manual** |
|---|---|
| Section 11(e) – <u>Quarterly *Purchase Volume Discount*</u>: "For providing *service* to another *distributor*, Distributor shall be paid a percentage of the purchases computed as a variable . . . ." | Section 5.5 – <u>Rewards for Servicing a Distributor</u>: "To receive servicing rebates and other benefits of having a network, a Distributor must . . . provide *services* to another Joint Venture or *Distributor*. . . . [Y]ou will also receive a monthly *purchase volume discount* . . . ." |
| Section 11(f) – <u>*Servicing Finance Charge Rebate*</u>: "For *servicing* another distributor, Distributor shall be paid a percentage of the retail finance business . . . ." | Section 5.5 – <u>Rewards for Servicing a Distributor</u>: "To receive servicing rebates and other benefits of having a network, a Distributor must . . . provide *services* to another Joint Venture or *Distributor*. . . . [Y]ou will also receive . . . a *servicing finance charge rebate* . . . ." |

In contrast, Section 5.6 of the Distributor's Manual, which governs "Sponsoring a *Territory*," has no such counterpart in Part IV of the 1987 Agreement. (Docket No. 16-5, at 43.) As Defendants correctly note, it is under section 5.6 of the Manual that the "additional benefits" for a "Master" are laid out. (*Id.*) What Defendants conveniently ignore, however, **is that section 5.6 is not contained in Part IV of the 1987 Agreement**. Indeed, as the Court correctly noted in its opinion (*see* docket no. 25 at 7), Part IV of the 1987 Agreement does not cover all distributor benefits and it is void of any mention of benefits provided to a Master or spin-out territories. The words "Master" or "territories" are not mentioned in Part IV, let alone benefits for sponsoring a territory. Though they try, Defendants cannot shoehorn the benefits provided to a Master for a

7

sponsoring *territory* into the benefits outlined in section 11(c) of Part IV of the 1987 Agreement for sponsoring a *distributor*.

In the end, contrary to Defendants' contention otherwise, nothing in the plain language of Section 11(c) even suggests that Part IV covers territory spin-outs. In fact, although other sections of the Distributor's Manual fit nicely with specific provisions found in Part IV of the 1987 Agreement, the "Sponsoring a Territory" section is not addressed. Accordingly, Claim 1 of Defendants' arbitration demand is not contained within the limited arbitration clause of the 1987 Agreement.

## CONCLUSION

Defendants have failed to show that the Court's finding that Hy Cite had a strong likelihood of success on the merits of its declaratory judgment claim was the result of a manifest error of law or fact. Accordingly, Defendants' Motion for Reconsideration should be denied, keeping the preliminary injunction entered against Defendants intact.

Dated this 14th day of May, 2012.

                                **MICHAEL BEST & FRIEDRICH LLP**

                            By:   s/ Amy O. Bruchs
                                  Michelle L. Dama, SBN 1041809
                                  Amy O. Bruchs, SBN 1021530
                                  Albert Bianchi, Jr., SBN 6292391
                                  One South Pinckney Street, Suite 700
                                  P.O. Box 1806
                                  Madison, WI  53701-1806
                                  Telephone:  (608) 257-3501
                                  Fax:  (608) 283-2275
                                  Email:  mldama@michaelbest.com
                                            aobruchs@michaelbest.com
                                            abianchi@michaelbest.com
                         Attorneys for Plaintiff Hy Cite Enterprises, LLC